STATE OF NEBRASKA, APPELLEE, V. ALFRED TRACY CLERMONT, APPELLANT.

284 N. W. 2d 412

Filed October 16, 1979. No. 42554.

Terry E. Savage and Joseph M. Caffall, for appellant.

Paul L. Douglas, Attorney General, and John Boehm, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The defendant was charged with second degree murder in the death of his 2-year-old stepson. Jury trial was waived. After trial the District Court found the defendant guilty and sentenced him to 10 years imprisonment.

The defendant and his second wife, Guadalupe, were married January 3, 1978. Two of Guadalupe's children, John, age 2, and his sister, Terri, age 4, lived with the defendant and their mother after the marriage.

At approximately 3 p.m., on July 22, 1978, the defendant took his two stepchildren with him and drove his wife to work. The defendant had not worked for a week and had been babysitting with his stepchildren during that time. When the 2-year-old boy's mother got out of the car at her place of employment, the child started to cry. The defendant testified that he slapped him in the face, leaving a black and blue mark. The defendant also testified that when he and the children returned to their home, the child finished his dinner and was spanked for wetting his pants. The defendant then took him to the bathroom and sat him on the toilet. The boy began to cry and the defendant slapped him on the side of the head causing the child to fall from the toi-

let seat and strike his head on the bathtub. The fall knocked the boy unconscious and the defendant revived him by splashing water on his face. The child was breathing and the defendant testified that he thought the boy was all right and laid him on a bed. The time was approximately 4 p.m.

The defendant then went next door to drink beer with a neighbor. He testified that he returned to his house two or three times to check on the boy, and the last time he returned he discovered that the boy was no longer breathing. The defendant began giving mouth-to-mouth resuscitation and called his wife at approximately 6:45 p.m., to ask her to call an ambulance. The ambulance arrived at approximately 7 p.m., and took the child to the hospital but he was dead on arrival.

Severe bruises and lacerations covered the boy's body, particularly his legs, buttocks, and head. Some of the bruises appeared to be old and some were recent. There was evidence that some of the bruises and lacerations had been caused by various accidents, the latest of which had occurred the day before the boy's death. There was also evidence that the defendant had slapped the boy and beaten him with a belt on several occasions during the week before his death.

The autopsy revealed hemorrhaging in the membrane around the boy's brain, and the medical evidence was that the cause of death was an acute head injury which had been sustained recently, probably within hours before the boy's death. The District Court found the defendant guilty and this appeal followed.

The defendant first contends that the District Court erred in refusing to accept defendant's offer to plead guilty to the lesser-included offense of manslaughter. Generally speaking, the accused has the right to plead guilty to the offense charged, but we find no authority to support the contention that the

accused has any right to require a court to accept a plea of guilty to a lesser-included offense. The general rule of law is that acceptance or rejection of a plea of guilty to a lesser offense included in the offense charged rests in the discretion of the court, and the acceptance of such a plea should be made with great caution. 21 Am. Jur. 2d, Criminal Law, § 494, p. 483; State v. English, 242 Iowa 248, 46 N. W. 2d 13; State v. Ingram, 273 Minn. 356, 141 N. W. 2d 802.

The record in the case now before us establishes that the court determined that it would not be justified in accepting the plea to the lesser-included offense without full knowledge of all the facts in the case. That rationale is supported by the cases. See State v. Koeppel, 250 Iowa 1052, 97 N. W. 2d 926. The District Court was fully justified in refusing to accept a plea of guilty to the lesser-included offense of manslaughter, and there was no abuse of discretion by the trial court.

The defendant next contends that the admission of six color photographs of the body of the 2-year-old victim constituted prejudicial error because the photographs were gruesome in nature, cumulative, and unnecessary to establish the State's case. Each of the six photographs was taken from a different angle showing different aspects of the various injuries to the boy's body. The photographs were offered and used for the purpose of establishing malice and intent, as well as to show the various injuries to the victim's body. In a homicide case, photographs of the victim, upon proper foundation, may be received in evidence for purposes of identification, to show the condition of the body, the nature and extent of the wounds or injuries, and to establish malice or intent. State v. Dittrich, 191 Neb. 475, 215 N. W. 2d 637; State v. Robinson, 185 Neb. 64, 173 N. W. 2d 443.

The record in the present case establishes that the

photographs were accurate representations of what they depicted and were relevant to show the condition of the body, the nature and extent of the wounds and injuries, and to establish malice and intent. There was no abuse of discretion in admitting them into evidence.

The defendant next contends that certain statements of the defendant were not admissible in evidence because they were a part of a polygraph test and therefore should have been excluded. The record, however, establishes that the statements objected to in this case were neither a part of a polygraph test nor the results of a polygraph test. Instead, the evidence consisted of statements made to a police officer during preliminary questioning prior to the giving of a polygraph test. The statements were not a part of the polygraph test and the officer did not testify as to the polygraph test or results of any polygraph examination.

In People v. Mason, 29 Ill. App. 3d 121, 329 N. E. 2d 794, a statement preceding a polygraph test was held to be admissible evidence for use as part of the factual basis for a guilty plea. The court said: "The appellant made an incriminating statement during a conversation that preceded the actual performance of the test. Such a statement does not fall under the polygraph exclusion, as it is not part of the examination." In the case now before us there is no evidence or contention that the statements were not voluntary. Counsel for the defendant was the one who referred to a polygraph test, not the prosecution. The statements introduced into evidence here were not the results of any polygraph test, nor do they fall under any polygraph exclusion.

Finally, the defendant contends that the evidence is insufficient to support the verdict of guilty to second degree murder. The essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously. State

v. Johnson, 200 Neb. 760, 266 N. W. 2d 193. The elements of malice and intent concern the state of mind of the slayer. Malice, in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse, and malice and intent may be inferred from the evidence relating to the circumstances of the criminal act. State v. Johnson, *supra*; State v. Partee, 199 Neb. 305, 258 N. W. 2d 634.

The verdict of the fact finder must be sustained if, taking the view most favorable to the State, there is sufficient, competent evidence to support it. State v. Thompson, 198 Neb. 48, 251 N. W. 2d 387; State v. Lacy, 195 Neb. 299, 237 N. W. 2d 650. The evidence in the present case is more than sufficient to sustain the verdict.

AFFIRMED.