STATE OF NEBRASKA, APPELLEE, V.
LEE E. SUHR, APPELLANT.

300 N.W.2d 25

Filed December 19, 1980. No. 43228.

Dennis R. Keefe, Lancaster County Public Defender, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

BRODKEY, J.

In an information filed in the county court of Lancaster County, Nebraska, on June 5, 1979, Lee E. Suhr, the defendant and appellant herein, was charged under Neb. Rev. Stat. § 28-611(2) (Reissue 1979) with issuing a bad check, second offense. On June 19, 1979, the defendant waived his right to a preliminary hearing in the matter and was bound over to the District Court for Lancaster County for trial. Prior to his arraignment on the charge, the defendant filed a motion to quash, challenging the use of a prior misdemeanor conviction for no-account checks under the provisions of the criminal code in effect prior to the effective date of the new Criminal Code, January 1, 1979. The District Court overruled the defendant's motion, and he entered a plea of not guilty to the charge at his arraignment.

On November 26, 1979, the defendant waived his right to a trial by jury and the case was set for trial to the court on December 19, 1979. At trial, all the facts of the case were stipulated by the parties and the defendant was found guilty as charged. Suhr was sentenced to a term of imprisonment from 18 months to 2 years, with credit given for 77 days spent in custody while awaiting disposition of his case.

The facts, as stipulated, appear to be as follows: On April 24, 1979, the defendant, Lee E. Suhr, went to the Gateway Western store located in the Gateway Shopping Center, Lincoln, Lancaster County, Nebraska, and presented a check drawn on his checking account at the Lincoln Bank South to Bethine Clark, an employee of the Gateway Western store. This check, signed by the defendant, in the amount of $18.71, was dated April 24, 1979, and was made payable to Gateway Western. In return for this check, Suhr received western wear clothing from the Gateway Western store. There was no agreement between Lee E. Suhr and Bethine Clark, or anyone else at Gateway Western, that the check would be held before being presented for pay-

ment, nor did the above-described check constitute payment on any account in any form whatsoever.

After receiving the above-described check, MarJean Schweitzer, the bookkeeper for Gateway Western, sent the check to Lincoln Bank South for payment in the normal course of Gateway Western's business. The check was returned to Gateway Western by Lincoln Bank South unpaid because the account had been closed. On May 10, 1979, MarJean Schweitzer turned the check over to the office of the Lancaster County Attorney for prosecution.

The stipulation for trial also provided that Rod Johnson, an officer at the Lincoln Bank South, would testify that the defendant did open a checking account at the Lincoln Bank South on February 16, 1979, with a deposit of $135.78, and that it was on this account that the check was drawn. When Suhr opened this account, he advised the bank that his address was 5200 South 40th Street, Lincoln, Nebraska, and never notified the bank of any change in his address. There were no other deposits made to this account by Suhr and on March 8, 1979, Lincoln Bank South closed his checking account because it was $61.88 overdrawn. Rod Johnson would also testify that, in the ordinary course of the bank's daily business, the bank sends to customers, at the address provided to the bank by the customer, notice of all checks returned by the bank by reason of "insufficient funds" or "account closed," and that, in the ordinary course of the bank's daily business, the bank does notify customers when an account is closed by the bank. Johnson would further state that, as far as he knows, this standard procedure was followed with regard to Suhr.

The stipulation also provided that Kim Stratman would testify that she was employed by the Lancaster County Attorney's office as a paralegal in the bogus check division; and that on April 26, 1979, a letter was sent by U.S. mail, postage prepaid, to Lee Suhr's last known address of 5200 South 40th Street, Lincoln,

Nebraska, advising him that the county attorney's office was in possession of a number of checks written by him which had been returned to the depositor by reason of insufficient funds or because his account had been closed. This letter advised Suhr that it is against the law in the State of Nebraska to write checks knowing that there is no account or that there are insufficient funds to cover the amount of the check. This letter stated that Suhr had 10 days within which payment for all the checks must be received by the county attorney's office. This letter was not returned to the county attorney's office by the U.S. Postal Service as undeliverable for any reason, and the county attorney's office received no response from Suhr as a result of the sending of this letter. On May 2, 1979, another letter was sent to Suhr by U.S. mail, postage prepaid, to the address of 5200 South 40th Street, reminding him that he had been contacted with regard to his bogus check situation and advising him that, since he had not satisfactorily taken care of the matter, a warrant for his arrest would be issued in 7 days. This letter, too, was not returned to the county attorney's office. On May 14, 1979, the defendant contacted the county attorney's office and was advised of the current total number of bogus checks in its possession. This total included the check written to Gateway Western. The defendant stated at that time that he would take care of all those checks by the next day, May 15, 1979.

It was also stipulated that Kim Stratman would further testify that the Lancaster County Attorney's office was in possession of 58 checks written by the defendant on this same account at Lincoln Bank South; and that all those checks had been turned over to the county attorney's office for prosecution because the checks had been unpaid by reason of insufficient funds or by reason of the account being closed. The checks in the possession of the county attorney's office included 3 checks written in the month of February 1979; 16 checks written in the month of March 1979; 19 checks

written in the month of April 1979; and 20 checks written in the month of May 1979. The checks written in the month of May included 12 checks which were written by the defendant on or after May 15, 1979. The total dollar amount of bogus checks in the possession of the county attorney's office was $1,411.24; and there were $118 in statutory prosecution fees which have accumulated in this case, making the total amount owed to the county attorney's office by the defendant of $1,527.24. As of December 19, 1979, Suhr had made no restitution with regard to any of these checks.

Further, on June 16, 1976, a complaint was filed in the county court of Lancaster County, Nebraska, at docket 166, page 969, charging the defendant with a misdemeanor offense of writing a no-account check, pursuant to Neb. Rev. Stat. § 28-1212 (Reissue 1975) (repealed 1977). On June 23, 1976, the defendant was arraigned on this offense in the Lancaster County court. He was advised of the nature of the charges against him by a reading of the complaint, and the possible penalties were explained. Suhr's constitutional rights were explained to him by a Lancaster County judge. The defendant pleaded not guilty and the Lancaster County Public Defender's office was appointed to represent him. On July 12, 1976, the defendant again appeared in Lancaster County court with his attorney, George Sornberger, an attorney on the staff of the Lancaster County Public Defender's office. At that time, Suhr changed his plea to "no contest." The court heard the State's evidence and found the defendant guilty of the offense of writing a no-account check. Suhr was sentenced to 45 days in the Lancaster County jail and ordered to pay court costs. It was stipulated that there was no appeal of this case and there were no legal matters pending as of December 19, 1979, with regard to the misdemeanor offense found at docket 166, page 969, of the Lancaster County court.

Suhr has appealed to this court, contending that the trial court committed error by holding that his

1976 misdemeanor conviction for a no-account check, entered prior to the operative date of § 28-611, qualified as a conviction for the purpose of enhancing his sentence under § 28-611(2). In this regard, § 28-611 provides, in pertinent part:

"(1) Whoever obtains property, services, or present value of any kind by issuing or passing a check or similar signed order for the payment of money, knowing that he has no account with the drawee at the time the check or order is issued, or, if he has such an account, knowing that he does not have sufficient funds in, or credit with, the drawee for the payment of such check or order in full upon its presentation, *commits the offense of issuing a bad check.* Issuing a bad check is: (a) A Class III felony if the amount of the check or order is one thousand dollars or more; (b) A Class IV felony if the amount of the check or order is three hundred dollars or more, but less than one thousand dollars; (c) A Class I misdemeanor if the amount of the check or order is seventy-five dollars or more, but less than three hundred dollars; and (d) A Class II misdemeanor if the amount of the check or order is less than seventy-five dollars.

"(2) *For any second or subsequent offense under subdivision (1) (c) or (1) (d) of this section,* any person so offending shall be guilty of a Class IV felony." (Emphasis supplied.)

In this state, all public offenses are statutory. "No act is criminal unless the Legislature has in express terms declared it to be so, and no person can be punished for any act or omission which is not made penal by the plain import of written law." *State v. Ewert,* 194 Neb. 203, 204, 230 N.W.2d 609, 610 (1975). See, also, *State v. Hauck,* 190 Neb. 534, 209 N.W.2d 580 (1973); *Lane v. State,* 120 Neb. 302, 232 N.W. 96 (1930). In the present case, § 28-611 (2) makes it a Class IV felony for any person to be convicted of a *second or subsequent bad check offense under subdivision (1) (c) or (1) (d) of the statutory provisions.* It is clear that the statutory lanugage expressly requires that the

prior conviction necessary to create a second or subsequent offense be a conviction under § 28-611 (1) (c) or (1) (d).

In this case, the defendant's prior conviction was a misdemeanor conviction entered in 1976 under Neb. Rev. Stat. § 28-1212 (Reissue 1975) (repealed 1977), and not under either subdivision (1) (c) or (1) (d) of § 28-611. Section 28-1212, under which the defendant was convicted, provided: "Any person who, with intent to defraud, shall make or draw, utter or deliver any check, draft, assignment of funds, or order for the payment of money upon any bank, cooperative credit association, or other depository knowing, at the time of such making, drawing, uttering, or delivering, that the maker or drawer has no account or deposit in such bank, cooperative credit association, or depository, upon conviction thereof, shall be punished as follows: (1) If such check, draft, order or assignment of funds so issued be for a sum not exceeding seventy-five dollars, the person so convicted shall be fined in any sum not less than five dollars nor more than five hundred dollars, or shall be imprisoned in the county jail not more than six months, or be both so fined and imprisoned, at the discretion of the court, and shall pay the costs of prosecution; or (2) if such check, draft, order or assignment of funds so issued be for a sum greater than seventy-five dollars, *or if any person shall have been previously convicted* of issuing a check, draft, order or assignment of funds under one hundred dollars, the person so convicted shall be imprisoned in the Nebraska Penal and Correctional Complex not exceeding ten years, or be imprisoned in the county jail not exceeding one year, or be fined not less than fifty dollars nor more than five thousand dollars, or be both so fined and imprisoned, at the discretion of the court. Any such instrument given in payment for lodging or other accommodations at any apartment house, hotel or motel shall be presumed to have been given with intent to defraud, but such presumption may be rebutted." (Emphasis supplied.)

Section 28-611, the "bad check" statute in the new Criminal Code, effective January 1, 1979, sets out in specific terms the requirements which must be met in order to convict a person for a second or subsequent offense. We note that the Legislature, in enacting the new statutory language, deleted the words *"or if any person shall have been previously convicted,"* originally found in § 28-1212. In the new statute, not only were the above words eliminated, but the statute affirmatively declares that, for an offense to be a second or subsequent offense, it must be a prior conviction under subdivision (1) (c) or (1) (d) of § 28-611.

It is a fundamental principle of statutory construction that a penal statute is to be strictly construed. *State v. Robinson*, 202 Neb. 210, 274 N.W.2d 553 (1979). See, also, *State v. Nance*, 197 Neb. 257, 248 N.W.2d 339 (1976); *State v. Lewis*, 184 Neb. 111, 165 N.W.2d 569 (1969); *State v. Simants*, 182 Neb. 491, 155 N.W.2d 788 (1968). This court has also held that "Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language." *State v. Gallegos*, 193 Neb. 651, 653, 228 N.W.2d 615, 617 (1975). See, also, *Rudder v. American Standard Ins. Co. of Wisconsin*, 187 Neb. 778, 194 N.W.2d 175 (1972); *Insurance Co. of North America v. County of Hall*, 188 Neb. 609, 198 N.W.2d 490 (1972). There is no ambiguity or gap in the new statute which would require us to resort to any of the traditional rules of statutory construction in order to ascertain the intent of the Legislature. The language in the new statute is clear and unambiguous, and is not subject to interpretation. If the Legislature had intended to allow a previous conviction for no-account checks under prior statutes to constitute a prior offense upon which a conviction for a second or subsequent offense could be based, it could easily have adopted in the new statute the language previously contained in § 28-1212. However, the Legislature did not do so, but has specifically pro-

vided that a prior conviction under subdivision (1) (c) or (1) (d) of § 28-611 is required in order to enhance the penalties for the issuance of a second or subsequent bad check.

The Legislature, in enacting the present statute, is presumed to have known the preexisting law, and in enacting the amendatory statute, we must conclude that the language was intentionally changed for the purpose of effecting a change in the law itself. In any event, the Legislature has the power to change the above provisions if it so desires.

We therefore hold that § 28-611 is controlling of the disposition of this case, and that defendant's prior misdemeanor conviction under § 28-1212 is not a "prior offense" within the plain import of § 28-611(1)(c) or (1)(d). Under § 28-611(1)(d), the issuance of a bad check in an amount less than $75 is declared to be a Class II misdemeanor. Neb. Rev. Stat. § 28-106 (Reissue 1979) provides that the penalty for conviction of a Class II misdemeanor shall be: "Maximum-six months imprisonment, or one thousand dollars fine, or both "Minimum-none."

We, therefore, affirm the conviction of the defendant for issuing a bad check and remand the cause to the District Court for further proceedings and resentencing in conformity with the provisions of the above-quoted statutes.

CONVICTION AFFIRMED.
CAUSE REMANDED FOR RESENTENCING.