STATE OF NEBRASKA, APPELLEE, V. JOSEPH L. ETTLEMAN, APPELLANT.

425 N.W.2d 894

Filed July 15, 1988.   No. 87-602.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

After a trial to a jury in the district court for Douglas County, the 19-year-old defendant, Joseph L. Ettleman, was found guilty of second degree murder and use of a knife to commit a felony. The defendant was sentenced on the murder count to 30 years' incarceration. On the use of a knife to commit a felony count, the defendant was sentenced to 1 to 3 years' incarceration, to be served consecutively. Defendant appeals, contending that the evidence was insufficient to sustain the second degree murder conviction and that the sentences imposed were excessive. We affirm.

The record shows the following facts. On September 17, 1986, the defendant; the victim, Patrick Paulson; the defendant's girlfriend, Leslie Sammons; her roommate, Tomika Nielsen; and Don Jacobs were gathered in an apartment shared by Sammons and Nielsen, located near downtown Omaha. The group was at the apartment from approximately 2 until 9 p.m., smoking hashish and drinking beer and whiskey. During the course of the party, the victim became intoxicated, aggravated defendant and punched him, and attempted to fondle defendant's girlfriend. The defendant became very upset, but was persuaded by Sammons and Nielsen not to start a fight.

As the evening wore on, the tension between the defendant and the victim mounted. At approximately 9 p.m., the party came to an end when the group ran out of beer and whiskey. The defendant informed Sammons that he and Jacobs were leaving to go to the defendant's grandmother's house. At Sammons' request, the defendant agreed to take the victim with him.

The defendant, the victim, and Jacobs then left the apartment and began walking east toward the downtown area. The defendant and Jacobs both testified that the victim had difficulty walking because of his intoxicated condition. As they proceeded toward the downtown area, the defendant testified, the victim continued to taunt him. The defendant led the parties to a secluded lot behind a chemical plant located near the

downtown area. When the parties reached the lot, the victim criticized defendant and cursed him. At that point, the defendant testified, he "cracked," turned around to take a swing at the victim, and hit him in the chest. Defendant testified that he then stabbed the victim with a 5-inch knife which defendant often carried with him.

The defendant further testified that he stabbed the victim after the victim attempted to hit him. Defendant also testified that as he and Jacobs were walking away from the victim, Jacobs suggested that they return to the body to search for cash. The defendant testified that he cut out the pockets of the victim's jeans in order to facilitate the search for money.

Jacobs and the defendant then left the area and parted. Defendant walked to his stepfather's house and gave him the knife which the defendant had used. The knife was eventually taken into custody by the police, and was introduced into evidence at trial.

Approximately $1^1/_2$ to 2 hours after the stabbing, the defendant met Sammons and Nielsen. Nielsen testified that defendant had blood on his jeans, was very upset, and told her that he had stabbed the victim seven to eight times. Sammons testified that the defendant told her that he had killed the victim and that he had stabbed him four to eight times.

The victim's body was discovered the next morning. The body had sustained 11 stab wounds. The defendant was arrested in the early morning hours of September 19. On that same morning, after proper *Miranda* warnings, the defendant gave a taped confession, which was introduced into evidence at trial. The confession was fully corroborated by defendant's testimony at trial.

In his first assignment of error, the defendant contends that the evidence was insufficient to sustain the defendant's second degree murder conviction. In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. The verdict of a jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support the verdict. *State v. Bodfield*, 228 Neb. 205, 421

N.W.2d 794 (1988).

The defendant argues that the State presented no evidence at trial that the defendant intended to kill the victim, and that the evidence was sufficient only for a manslaughter conviction. We do not agree. A person commits murder in the second degree if he or she causes the death of a person "intentionally, but without premeditation." Neb. Rev. Stat. § 28-304 (Reissue 1985). We have held that the essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously. *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986). Malice, in the context of second degree murder, denotes a condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse and is any willful or corrupt intention of the mind. Malice and intent may be inferred from the circumstances relating to the criminal act. *State v. Keithley*, 227 Neb. 402, 418 N.W.2d 212 (1988); *State v. Williams*, 226 Neb. 647, 413 N.W.2d 907 (1987).

There was more than sufficient evidence upon which the jury could find beyond a reasonable doubt that the defendant purposely and maliciously killed the victim. The 11 stab wounds alone support this conclusion. At trial and in his taped confession, the defendant admitted that he killed the victim. There was testimony by a witness who was present when the defendant stabbed the victim. Taking the view most favorable to the State, the jury could infer that the defendant intentionally and with malice killed the victim. Defendant's first assignment of error is without merit.

In his second assignment of error, the defendant contends that the sentences imposed are excessive. Second degree murder is a Class IB felony, punishable by a term of imprisonment from 10 years to life. The use of a knife to commit a felony is a Class III felony, punishable by a minimum of 1 year's imprisonment or a maximum of 20 years' imprisonment. The defendant was sentenced to 30 years' imprisonment on the murder count and 1 to 3 years' imprisonment on the use of a knife to commit a felony count. The sentences are well within the statutory maximums. It is well settled that a sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse

of discretion on the part of the sentencing judge. *State v. Carlson*, 227 Neb. 503, 418 N.W.2d 561 (1988). There was no abuse of discretion in this case.

The judgment of the district court is affirmed.

AFFIRMED.