STATE OF NEBRASKA, APPELLEE, V. CRAIG T. GRIMES, APPELLANT.
519 N.W.2d 507

Filed July 22, 1994.    No. S-93-668.

Julianne M. Dunn and Daniel J. Neppl for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

PER CURIAM.

Following a jury trial in the Douglas County District Court, Craig T. Grimes was convicted of second degree murder and use of a firearm to commit a felony for the September 7, 1992, shooting death of James P. Kirby. He appealed his convictions of murder in the second degree and use of a firearm to commit a felony to the Nebraska Court of Appeals. Under our authority to regulate the caseloads of the appellate courts of this state, we

removed the matter to this court. Grimes challenges the district court's rulings on a motion to suppress and on a motion for a psychological examination. He also contends that the district court abused its discretion in sentencing him. Finally, Grimes contends that the district court committed reversible error in instructing the jury. He asserts the trial court erred by failing to instruct the jury that malice is an element of the crime of second degree murder. We agree and, accordingly, reverse the judgment of the district court and remand this cause for a new trial.

## BACKGROUND

Grimes was charged by information with second degree murder and use of a firearm to commit a felony for the September 7, 1992, shooting death of Kirby. Prior to trial, Grimes, then age 16, filed a motion to have his case transferred to the separate juvenile court. Additionally, asserting that an examination 18 months earlier revealed depression and an adjustment disorder, Grimes moved the court to order a psychological exam. The trial court denied both motions. Grimes also filed a motion to suppress the evidence obtained by police during a search of his home. This motion was also denied. Grimes was tried before a jury in the Douglas County District Court. He was convicted of both second degree murder and use of a firearm to commit a felony. Grimes was sentenced to life in prison for second degree murder and to a consecutive sentence of 6 to 10 years for use of a firearm in the commission of a felony.

## ASSIGNMENTS OF ERROR

Restated, Grimes assigns that the trial court erred in (1) failing to grant his motion to suppress, (2) failing to grant his motion for a psychological examination, (3) failing to instruct the jury that malice was an element of second degree murder, and (4) in sentencing him to life in prison.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). In determining whether a trial court's findings on a motion to suppress are

clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

## MOTION TO SUPPRESS

Grimes asserts that the trial court erred in failing to suppress the evidence police obtained during a search of his home. Grimes contends the evidence should have been suppressed, since it was obtained during an unlawful search. He argues that the search was unlawful because the affidavit in support of the request for a search warrant failed to demonstrate that the hearsay information contained therein came from a reliable source.

The affidavit executed by the police to obtain the search warrant states in pertinent part:

[T]he following are the grounds for the issuance of a search warrant for said property and the reasons for the Affiant's belief, to-wit: (1) On Monday, September 7, 1992, at 1746 hours, cruiser officers with the Omaha Police Division responded to a disturbance/shooting radio call at 1702 North 32nd St., Omaha, NE.

The victim of this shooting incident which took place on the fore-mentioned address, was identified as James P. Kirby, a white male, Date of Birth, 10-05-1965, who resided at 1702 North 32nd St., Omaha, NE.

The victim, James P. Kirby, died shortly after the shooting incident as a result of sustaining a single gun shot wound to the chest area.

(2) During the course of the follow-up investigation, a spent round was recovered from the sidewalk area in front of 1702 North 32nd St., Omaha, NE, where the victim, James P. Kirby, collapsed after being shot. A subsequent preliminary examination of the spent bullet indicated an approximate size of 44 caliber. Also during the course of the follow-up investigation, affiant officers, Jadlowksi, #991, and Comstock, #860, were actively involved in developing information from numerous witnesses which indicated a chrome plated 44 caliber, long barrelled

revolver was used in this homicide and possible identification of suspects involved.

(3) One of the named suspects was identified as Doss, Ronnie L. a black male, DOB-12/09/74, residing at 4223 Binney St., Omaha, NE, currently a student at Benson High School of Omaha, NE. Doss was located at Benson High School, Omaha, NE, and transported to 505 South 15th St. Room #413, Omaha Police Headquarters on September 9, 1992, at 1515 hours, and at that location was interviewed by affiant officers, Jadlowksi, #991, and Comstock, #860, and during this interview he stated that he personally observed the suspect as Grimes, Craig, a black male, DOB-09/05/66, residing at 3915 North 43rd St., Omaha, NE, discharge what he described as 44 caliber long barrelled revolver, silver in color, with dark wood grained grips, at victim, Kirby, James. After observing the firearm discharge, witness, Doss, stated he observed the victim, Kirby, James, fall to the ground.

(4) After observing Kirby fall to the ground, Doss stated that he and Grimes, Craig with other individuals ran to Doss's vehicle and left the area. After driving around for a period of time, for approximately 2 hours, Doss stated, that he dropped Grimes off at his residence located at 3915 North 43rd St., and at this time Grimes still had in his possession the afore-mentioned 44 caliber long-barrelled revolver, silver, with wood grain grips.

(5) During the interview with Doss, he stated to affiant officers, that he had observed Grimes, Craig in possession of the afore-mentioned weapon. And two or three of these times, he was observed in possession of the weapon at 3915 North 43rd St. where Grimes, Craig resides with his father Grimes, Arthur.

A search warrant, to be valid, must be supported by an affidavit establishing probable cause, or reasonable suspicion founded upon articulable facts. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993). In evaluating probable cause for the issuance of a search warrant, the magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him,

including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993); *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991). The duty of the reviewing court is to ensure that the issuing magistrate had a substantial basis for determining that probable cause existed. *Id.*

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the search warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992). The affidavit must affirmatively set forth the circumstances from which the status of the informant can reasonably be inferred. *Id.*

Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *Id.*

Grimes concedes that Doss was an informant who made a statement against his own penal interest. However, Grimes argues that without independent corroboration, Doss' statements were not sufficiently reliable. In *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989), we addressed whether an affidavit for a search warrant containing admissions of criminal conduct established the reliability of the informant. In that case, a burglary suspect admitted to police his involvement in four burglaries. The suspect told police he had exchanged the stolen items for drugs at a particular residence. After interviewing the suspect, the investigating officer independently determined that one defendant resided at the given residence and had an extensive record for theft and

receiving stolen property. The officer also used burglary reports to identify the items to be searched for. We held that the affidavit containing the information compiled by the officer, including the burglary suspect's statements, was sufficient to establish probable cause.

Here, some of the statements made by the informant were also bolstered by information independently established by the police. The affidavit stated that the police recovered a slug at the scene of the shooting which was the approximate size of a .44-caliber slug. Also corroborative of Doss's statement was the affiant officer's statement that "numerous witnesses . . . indicated a chrome plated 44 caliber, long barrelled revolver was used in this homicide." Contrary to Grimes' contentions, the affidavit was supported by independent investigation which corroborates Doss' statements to deem them sufficiently reliable to support a search warrant.

Grimes also submits that Doss' statement against penal interest is not a sufficient indicia of reliability, since it was self-serving. Grimes contends that since Doss was also a suspect in Kirby's murder, Doss' statements were made for the purpose of exonerating himself. This issue was also previously addressed in *State v. Sneed and Smith, supra*. In support of our holding that an affidavit for a search warrant containing admissions of criminal conduct established the reliability of the informant, we quoted the following from *United States v. Harris*, 403 U.S. 573, 583-84, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971):

> Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct.

Despite Grimes' assertions to the contrary, a statement against penal interest, in and of itself, carries a sufficient indicia of reliability to support a finding of probable cause. *United States v. Harris, supra*.

Finally, with regard to the search warrant, Grimes contends that Doss' subsequent testimony at trial and in depositions

reveals that he was unreliable. What Doss' subsequent testimony revealed is irrelevant. An appellate court is restricted to consideration of the information and circumstances contained within the four corners of the underlying affidavit. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993); *State v. Utterback, supra.* Evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id.*

We conclude that under the totality of the circumstances, the underlying affidavit established probable cause to search. The warrant was therefore proper, and the trial court did not err by refusing to suppress the evidence obtained during the search of Grimes' residence.

### MOTION FOR PSYCHOLOGICAL EXAMINATION

Next, Grimes contends the trial court erred in denying his motion for a psychological examination. Grimes sought the examination to support his motion to transfer to juvenile court. Grimes alleged that the psychological examination was necessary for a determination of whether he was of a sufficient psychological, emotional, and mental makeup to be tried as an adult. In support of his motion for evaluation, Grimes alleged that a psychological evaluation performed 18 months earlier showed that he suffered from depression and an adjustment disorder. At a hearing on the motion to transfer, Grimes adduced evidence to that effect.

Grimes, however, has failed to demonstrate that the trial court had any legal right, let alone any legal obligation, to grant such a motion. He has cited no statutory or case law as authority for his position. He merely argues that the denial of the motion was an abuse of discretion.

Grimes is correct in asserting that the "sophistication," "maturity," and "emotional attitude" of a defendant are relevant considerations to the issue of whether the district court should waive jurisdiction in favor of the juvenile court. See Neb. Rev. Stat. § 43-276(6) (Reissue 1988). In deciding whether to transfer proceedings to juvenile court, the court having jurisdiction over a pending criminal prosecution must carefully consider the criteria set forth in § 43-276. *State v. Ice*, 244 Neb.

875, 509 N.W.2d 407 (1994). Section 43-276 requires that the court consider:

> (1) The type of treatment such juvenile would most likely be amenable to; (2) whether there is evidence that the alleged offense included violence or was committed in an aggressive and premeditated manner; (3) the motivation for the commission of the offense; (4) the age of the juvenile and the ages and circumstances of any others involved in the offense; (5) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court, and, if so, whether such offenses were crimes against the person or relating to property, and other previous history of antisocial behavior, if any, including any patterns of physical violence; (6) the sophistication and maturity of the juvenile as determined by consideration of his or her home, school activities, emotional attitude and desire to be treated as an adult, pattern of living, and whether he or she has had previous contact with law enforcement agencies and courts and the nature thereof; (7) whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of the juvenile; (8) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in custody or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; and (9) such other matters as the county attorney deems relevant to his or her decision.

See *State v. Doyle*, 237 Neb. 60, 464 N.W.2d 779 (1991).

However, the fact that evidence obtained from an updated evaluation of Grimes' condition may be relevant does not mean that an evaluation must be ordered. The right of an indigent defendant to the appointment of an expert witness at State expense generally rests in the discretion of the trial court. *State v. Lesiak*, 234 Neb. 163, 449 N.W.2d 550 (1989). See, also, *State v. Suggett*, 200 Neb. 693, 264 N.W.2d 876 (1978).

In the case at hand, we cannot say that denial of the motion for evaluation was an abuse of discretion. Although we do not

decide whether the trial court's ruling on the motion to transfer was proper, we note that the motion for evaluation was within the context of a motion to transfer to juvenile court. We review a trial court's ruling on a motion to transfer for an abuse of discretion. *State v. Ice, supra.* Moreover, the consideration of the criteria listed in § 43-276 is a balancing test. *Id.* A court need not decide all of these criteria against the juvenile before denying a motion to transfer. *Id.* Thus, although an updated evaluation may have revealed additional information on Grimes' psychological condition, it is unlikely that the additional information would have had enough weight to shift the balance toward transferring this case to juvenile court.

The specific findings contained in the trial court's order overruling Grimes' motion to transfer reveal that many factors militated against a transfer to juvenile court: the serious nature of the charged offense; the alleged violent circumstances under which the offense was alleged to have been committed; Grimes' record with the juvenile court; his admission of gang involvement; and, if the allegations proved true, the fact that such a criminal would pose a threat to society. The trial court's denial of the motion for evaluation is affirmed.

## ABSENCE OF MALICE

The essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously. *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992); *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991); *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988); *State v. Ettleman*, 229 Neb. 220, 425 N.W.2d 894 (1988); *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986); *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983). This has been the law in this state since 1983. *Id.* It has also long been the law of this state that it is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *State v. Breaker*, 178 Neb. 887, 136 N.W.2d 161 (1965).

In this case, the jury was not instructed that it needed to find that the killing was done maliciously. Therefore, Grimes is entitled to a reversal of his convictions and a new trial.

The State's argument that this court only recently, in *State v. Myers, supra*, added malice as an element of second degree murder, shows ignorance of, or the disregard for, 11 years of consistent holdings by this court. The suggestion that including malice as an element of second degree murder "transgresses important and well-established principles of law," supplemental brief for appellee at 3, itself transgresses important and well-established principles of law. As we pointed out in *Myers*, if malice were not an element of second degree murder, the homicide statutes would not make sense.

Additionally, defining second degree murder without malice would make the performance of many noncriminal acts illegal. For instance, a police officer who kills in the line of duty can be said to have caused the death of a person intentionally. Therefore, absent malice, Neb. Rev. Stat. § 28-304 (Reissue 1989), would be unconstitutionally vague and overbroad. See *State v. Saulsbury*, 243 Neb. 227, 498 N.W.2d 338 (1993) (due process requires that criminal statutes be clear and definite and that a crime and ascertainable standards of guilt be defined with sufficient definiteness to inform those subject to the statute what conduct will render them liable to punishment). The State contends that the "justification" statutes, Neb. Rev. Stat. §§ 28-1406 to 28-1416 (Reissue 1989), would save the second degree murder statute from being held unconstitutional. The State argues this would prevent a conviction for noncriminal conduct. However, this would require a police officer, for instance, who is accused of second degree murder for a death in the line of duty to use a justification statute to prove his innocence. This would unconstitutionally shift the burden of proof to the defendant. See *State v. Parks*, 245 Neb. 205, 511 N.W.2d 774 (1994) (a jury instruction which shifts the burden of proof to a defendant on any essential element of a crime charged violates a defendant's due process right to a fair trial). See, also, *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) (jury instruction which shifts the burden of proof on a mental element of a crime to the

defendant violates due process). We in no way suggest that the "justification" statutes are invalid. If malice were not a statutory element of second degree murder and we were to require a defendant committing a "justified" act to adduce some evidence of lack of malice or "justification" in his defense, we would thereby violate that defendant's presumption of innocence. We continue to hold, as we have consistently for the past 11 years, that malice is an essential element of second degree murder.

## THE INFORMATION

We also note that the information charging Grimes omitted malice. In pertinent part, the information charged that Grimes did "intentionally, but without premeditation, kill James P. Kirby."

Generally, to charge the defendant with the commission of a criminal offense, an information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute or in language equivalent to the statutory terms defining the crime charged. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989). See, also, *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993) (where an information alleges the commission of a crime using the language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient). However, where as in second degree murder the express language of the statute does not make the elements of the crime clear, the express language of the statute is insufficient. The purpose of an information is to inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also so that he may be able to plead the judgment rendered thereon as a bar to later prosecution for the same offense. *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991). It is this purpose which is paramount.

The general rule has never been applied to an information charging the accused with second degree murder under the current statute, § 28-304. Since a charge under the express language of the statute would omit an essential element of the crime, the general rule is not applicable. See *State v. Oman*, 265

Minn. 277, 121 N.W.2d 616 (1963) (if a statute does not set forth all the elements necessary to constitute the offense intended to be punished, an indictment simply following the words of the statute is not sufficient, and, in such a case, the indictment must allege with certainty all of the particular elements necessary to bring the case within the intent and meaning of the statute). See, also, *Ex parte Allred*, 393 So. 2d 1030 (Ala. 1981) (indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense); *Stevens v. State*, 817 S.W.2d 800 (Tex. Crim. App. 1991) (although an indictment which tracks the language of the statute is ordinarily sufficient, it is not sufficient where more particularity is necessary to meet the requirement of notice to the accused). To be sufficient, an information charging second degree murder must allege that the accused killed purposely and maliciously.

## EXCESSIVE SENTENCE

Finally, Grimes contends that his sentence of life in prison is excessive and constitutes an abuse of judicial discretion. We need not address this issue in light of our granting a new trial.

## CONCLUSION

The trial court's failure to instruct the jury that malice is an element of second degree murder was prejudicial error. Grimes' convictions are reversed, and the cause is remanded to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., participating on briefs.

WRIGHT, J., dissenting.

I respectfully dissent from the majority's decision because it relies upon *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994). I disagree with *Myers*, which held that malice is a required element of second degree murder. Therefore, I write to explain my reasons for disagreeing with the holdings in the case at bar, in *Myers*, and in the cases on which *Myers* relies for the proposition that malice is an element of second degree murder.

In Nebraska, all crimes are statutory. *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 313 N.W.2d 438 (1981).

Prior to the adoption of the present criminal code in 1977, murder in the second degree was described as "purposely and maliciously, but without deliberation and premeditation, kill[ing] another." Neb. Rev. Stat. § 28-402 (Reissue 1975). The present code, as adopted in 1977, states that "[a] person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Neb. Rev. Stat. § 28-304 (Reissue 1989).

In *Myers*, this court held that the trial court had plainly erred by failing to include malice as an element within the jury instruction on second degree murder, even though the defendant had raised no objection to the instruction. To reach this holding, the court relied on a series of cases which have added malice as an element of second degree murder. The court first relied upon *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983), which held that the essential elements of the crime of murder in the second degree were that the killing be done purposely and maliciously. In turn, *Rowe* relied upon *State v. Clermont*, 204 Neb. 611, 284 N.W.2d 412 (1979), which also stated that the essential elements for the crime of murder in the second degree were that the killing be done purposely and maliciously. In *Clermont*, the court relied upon *State v. Johnson*, 200 Neb. 760, 266 N.W.2d 193 (1978), which included malice as an element of the crime. However, at the time *Johnson* was decided, second degree murder was statutorily defined as "purposely and maliciously, but without deliberation and premeditation, kill[ing] another." § 28-402 (Reissue 1975).

The Legislature subsequently amended § 28-402 and *purposely* omitted malice from the elements of second degree murder. In explaining the revisions to the criminal code in 1977, the Judiciary Committee's summary of L.B. 38 stated:

> Section 19 is comparable to Section 28-402 or second degree murder. It differs from the present section, which requires the killing to be purposely and maliciously, whereas the new code requires that the cause of death of a person need only be done intentionally. The penalty under existing law and this section is the same, i.e., 10 years to life imprisonment.

Summary of Contents, L.B. 38, Judiciary Committee, 85th

Leg., 1st Sess. 3 (Jan. 24-26, 1977). Section 19 of L.B. 38 was codified as § 28-304, which became effective January 1, 1979. See 1978 Neb. Laws, L.B. 748, § 54.

The subsequent cases in which this court has relied upon *Johnson* and *Clermont* have added the element of malice to second degree murder, although malice was specifically omitted from the criminal code when it was revised. In my opinion, malice has not been an essential element of the crime of murder in the second degree since January 1, 1979.

*Rowe* was decided June 17, 1983. Because the murder for which Rowe was charged and ultimately convicted occurred May 1, 1980, Rowe was charged under § 28-304(1) for "caus[ing] the death of a person intentionally, but without premeditation." Although the crime occurred after the effective date of the new statute, this court, relying on *Clermont*, held that the essential elements of the crime of murder in the second · degree were that the killing be done purposely and maliciously. The Legislature had purposely omitted malice as an element of the crime, and *Rowe*, in my opinion, incorrectly included "maliciously" as an element of second degree murder.

*State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), stated that this court has continued to require malice as an element of second degree murder even though malice is not specified by statute. The court concluded that by omitting the element of malice from the instruction on second degree murder, the instruction, in effect, became one for the crime of intentional manslaughter as defined by *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989). This conclusion is now eroded by the fact that we have since overruled the holding in *Pettit* that "manslaughter is an intentional killing of another under Nebraska law." *State v. Jones*, 245 Neb. 821, 832, 515 N.W.2d 654, 660 (1994). We stated in *Jones*, "According to *Pettit*, the only element that distinguishes manslaughter upon a sudden quarrel and second degree murder is the element of the sudden quarrel, since both killings are intentional." 245 Neb. at 829, 515 N.W.2d at 658. "Since our statutes define manslaughter as a killing without malice, there is no requirement of an intention to kill in committing manslaughter. The distinction between second degree murder and manslaughter upon a sudden quarrel

is the presence or absence of an intention to kill." *Jones*, 245 Neb. at 830, 515 N.W.2d at 659.

Therefore, what distinguishes second degree murder from manslaughter is the element of intent. In my opinion, malice is therefore not an element of either manslaughter or second degree murder.

In *State v. Suhr*, 207 Neb. 553, 300 N.W.2d 25 (1980), we stated that the Legislature, in enacting a statute, is presumed to have known the preexisting law. The court must conclude that in enacting an amendatory statute, the Legislature intentionally changed the language for the purpose of effecting a change in the law itself. With the amendment of the statute defining second degree murder, there is no presumption. The Judiciary Committee stated that it was changing the law by deleting the terms "purposely" and "maliciously" and requiring that the cause of death of a person need only be done intentionally.

I disagree with the majority's statement that malice has consistently been held to be an element of second degree murder in this state since *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983). Where a statute has been judicially construed and that construction has not evoked amendment, it will be presumed that the Legislature has acquiesced in the court's determination of its intent. *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). This rule applies where a statute is ambiguous. Where the language of a statute is plain and unambiguous, no interpretation is needed, and a court is without authority to change such language. *State v. Palmer*, 215 Neb. 273, 338 N.W.2d 281 (1983), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987). The language of the second degree murder statute is plain—malice is not an essential element.

As recently as *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992), malice was not described as an essential element of second degree murder. The court stated:

> Under Nebraska law, second degree murder is defined as causing the death of another intentionally, but without premeditation. § 28-304(1). . . . In order to convict a person of second degree murder, the State is required to prove all *three* elements—*the death, the intent to kill, and*

*causation*—beyond a reasonable doubt.

(Emphasis supplied.) *Cave*, 240 Neb. at 789, 484 N.W.2d at 464.

In *Cave*, the defendant was charged with first degree murder, attempted first degree murder, and two counts of use of a firearm in the commission of a felony. Following a bench trial, the court found the defendant guilty of both counts of use of a firearm in the commission of a felony and guilty of the lesser-included offenses of second degree murder and attempted second degree murder. In affirming the convictions, this court did not describe malice as an element of second degree murder.

This court, in rejecting Cave's arguments, relied upon *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). Patterson shot and killed his estranged wife's former fiance after finding them together. He was charged with second degree murder. In New York, there were two elements of second degree murder: " 'intent to cause the death of another person' " and " 'caus[ing] the death of such person or of a third person.' " *Patterson*, 432 U.S. at 198. Malice aforethought was not an element of the crime. *Id.* In *Patterson*, the crime of second degree murder had been rewritten as part of a recent revision of the state's criminal code. The second degree murder statute in New York is similar to Nebraska's statute, and malice is not an element of the crime in New York.

The trial court instructed the jury that if it found beyond a reasonable doubt that Patterson had intentionally killed the victim, but that Patterson proved by a preponderance of the evidence that he had done so under the influence of extreme emotional disturbance, it must find him guilty of manslaughter rather than murder. Manslaughter was defined as the intentional killing of another " 'under circumstances which do not constitute murder because [the defendant] acts under the influence of extreme emotional disturbance.' " *Patterson*, 432 U.S. at 199. The jury found Patterson guilty of murder. On appeal to the U.S. Supreme Court, Patterson argued that the New York murder statute was unconstitutional. The U.S. Supreme Court rejected this argument, stating:

We cannot conclude that Patterson's conviction under

the New York law deprived him of due process of law. The crime of murder is defined by the statute . . . as causing the death of another person with intent to do so. The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. No further facts are either presumed or inferred in order to constitute the crime. . . .

. . . It seems to us that the State satisfied the mandate of [*In re*] *Winship*[, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970),] that it prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [Patterson was] charged."

*Patterson*, 432 U.S. at 205-06. The U.S. Supreme Court declined to adopt as a constitutional imperative that a state must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of the accused. The Court concluded that the New York Legislature's decision to impose upon a defendant the burden of proving additional circumstances which lessen his culpability did not violate due process.

In *State v. Cave*, 240 Neb. 783, 789-90, 484 N.W.2d 458, 464 (1992), the court stated:

In order to convict a person of second degree murder, the State is required to prove all three elements—the death, the intent to kill, and causation—beyond a reasonable doubt. None of the elements is presumed upon proof of the others, nor is any element presumed in the absence of proof by the defendant of the converse of that element. As in New York, the fact that a homicide occurs "upon a sudden quarrel" is an additional circumstance which serves to mitigate an intentional killing. [Citations omitted.]

It is clear that whether a state's homicide laws violate due process depends a great deal upon the manner in which a state defines the crime charged. [Citations omitted.] Given the similarity between the second degree murder and manslaughter statutes of this state and those of New York, it is by no means clear that in a prosecution for second degree murder, the burden is on the State to

prove the absence of a sudden quarrel beyond a reasonable doubt. We do not decide the question, however, because even assuming the State carried such a burden, the evidence is sufficient to sustain the convictions in this case.

*Cave* is significant for two reasons. First, it shows that this court has not *consistently* held that malice is an element of second degree murder. *Cave* held that the death, the intent to kill, and causation are the three elements required to convict a person of second degree murder. See, also, *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). Second, *Cave* cited *Patterson*, which reinforces the fact that Nebraska's second degree murder statute, § 28-304, does not violate due process if malice is not an element of the crime. New York's second degree murder statute is similar to Nebraska's, and malice is not included in the language of either state's statute.

The New York statute which placed upon Patterson the burden of proving by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional distress in order to reduce the crime to manslaughter did not deprive Patterson of due process. I believe *Patterson* addresses the concern expressed by the majority in the present case that defining second degree murder without malice would make illegal the performance of many noncriminal acts, e.g., a police officer who kills in the line of duty can be said to have caused the death of a person intentionally.

The majority asserts that requiring a police officer who is charged with second degree murder for causing a death in the line of duty to use as a defense the "justification statutes," Neb. Rev. Stat. §§ 28-1406 to 28-1416 (Reissue 1989), would unconstitutionally shift the burden of proof to the police officer. I disagree. First, the burden of proving circumstances which are an affirmative defense or which justify or lessen culpability is not the issue before us in this case. Second, the justification statutes serve as affirmative defenses to a killing. An affirmative defense does not serve to negate any facts of the crime which the State must prove, i.e., intending to cause the death of another, but without premeditation. The elements to

be proven remain the death, the intent to kill, and causation. *State v. Cave, supra.* "Long before *Winship,* the universal rule in this country was that the prosecution must prove guilt beyond a reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant." *Patterson,* 432 U.S. at 211. The majority in the present case expressly states that it in no manner suggests that the justification statutes are invalid.

The majority suggests that absent malice, § 28-304 would be unconstitutionally vague and overbroad because due process requires that criminal statutes be clear and definite and that ascertainable standards of guilt be defined with sufficient definiteness to inform those subject to the statutes what conduct will render them liable to punishment. The majority states that if malice is not an element of second degree murder, the homicide statutes do not make sense. I disagree. In *Patterson,* the U.S. Supreme Court concluded that Patterson's conviction under New York law did not deprive him of due process of law. No facts beyond the death, intent, and causation are either presumed or inferred in order to constitute a murder. *Patterson v. New York, supra.*

Regardless of the number of times this court has relied upon *State v. Rowe,* 214 Neb. 685, 335 N.W.2d 309 (1983), we cannot legislate by judicial fiat that malice is an essential element of second degree murder. We simply do not have the power to do so. See Neb. Const. art. II, § 1. The Legislature deliberately removed malice from the second degree murder statute when the criminal code was revised, and malice is not an essential element of the crime until the Legislature says that it is.

In the case at bar, this court also holds that the information must contain the element of malice or the charge is insufficient. I disagree. Where the information alleges the commission of a crime using the language of the statute defining that crime, the charge is sufficient. *State v. Bowen,* 244 Neb. 204, 505 N.W.2d 682 (1993). The majority points out that the purpose of an information is to inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense and also be able to plead that the judgment

rendered thereon acts as a bar to later prosecution for the same offense. See *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991).

I fail to see how the absence of the word "maliciously" causes the information to be insufficient to comport with due process. Was Grimes denied procedural due process because the information did not say he "maliciously" caused the death of James P. Kirby? Grimes was charged by information as follows: "[O]n or about the 7th day of September, 1992, CRAIG T. GRIMES late of the county of Douglas and State of Nebraska, then and there being, did then and there intentionally, but without premeditation, kill James P. Kirby." The statutory elements of the crime have been described in the information. The State complied with procedural due process by charging Grimes in the language of the statute.

We have held that Nebraska's criminal procedure does not require a comprehensive and particularized factual description of elements of the offense charged in the information or complaint against a defendant. Using the language of the statute defining that crime or terms equivalent to such statutory definition is sufficient. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989).

The majority requires malice as an element of second degree murder despite the fact that the Legislature expressly removed the word "maliciously" from the second degree murder statute by amendment in 1977. Placing malice back into the statute is judicial legislation in violation of article II, § 1, of the Nebraska Constitution.

The information in the case at bar charges the elements necessary to constitute the offense intended to be punished. Since malice is not an element of second degree murder as defined by § 28-304, it was not prejudicial error for the trial court to fail to instruct the jury that malice was an element of second degree murder. Malice is not an element of the crime for which Grimes was charged, and I would affirm the conviction and sentence.