No. 79,214

STATE OF KANSAS, *Appellee*, v. RONALD McCOWN, *Appellant*.

(957 P.2d 401)

Opinion filed April 17, 1998.

*Melissa A. Kelly*, of Heathman & Kelly, of Topeka, argued the cause, and *James C. Heathman*, of the same firm, was with her on the briefs for appellant.

*Ann L. Smith*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J: Ronald McCown appeals from his second-degree intentional murder conviction. He contends that even though the 1993 legislative amendment to second-degree murder, K.S.A. 21-3402(a) (Ensley 1988), deleted the term "malicious" from the definition of that crime, malice still remains an element of second-degree intentional murder. Thus, he claims that the trial court erred by not instructing on the element of malice and that his

second-degree intentional murder conviction must be set aside. We affirm.

A full recitation of the facts in this case is not necessary because the question raised is one of law. Highly summarized, the facts are that the defendant was charged with first-degree murder in connection with the October 5, 1996, homicide of James Douglas, the stepfather of the defendant's roommate, Chad Gaskey. The body of Douglas was found on the living room floor of his home. An autopsy revealed that Douglas had suffered 97 separate wounds, including bruises, abrasions, lacerations, and stab wounds. Death was caused either by a stab wound which severed the jugular vein or a blunt force trauma to the body. A majority of the bruising occurred while the victim was still alive.

The defendant gave two statements to police officers. He first stated that he and Douglas got into a fight, that both he and Gaskey beat Douglas using fists and feet, and that Gaskey stabbed Douglas with a knife. He also stated that he stomped Douglas and watched Gaskey stick Douglas in the throat with a knife.

The district court instructed the jury on first-degree murder and on the lesser included offenses of intentional murder in the second degree, unintentional second-degree murder, voluntary manslaughter, involuntary manslaughter, aggravated battery, and battery. The defendant objected to the instruction regarding intentional second-degree murder on the ground that it did not include the element of malice. His objection was overruled. He raises this same issue on appeal.

In addition to his contention that the trial court wrongly failed to instruct on malice, the defendant argues that the specific instruction involving second-degree intentional murder was defective because it did not separate the phrases "upon sudden quarrel," "in the heat of passion," and "upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person," thereby confusing the jury. However, this argument was not briefed by the defendant and was raised for the first time during oral argument. We, therefore, do not consider this contention of the defendant. See *State v. Patterson*, 262 Kan. 481, 483, 939

P.2d 909 (1997). Moreover, our decision in this case renders the defendant's argument moot.

## Discussion and Analysis

Prior to 1993, second-degree murder was defined as "the malicious killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony." K.S.A. 21-3402 (Ensley 1988). Effective July 1, 1993, the legislature modified murder in the second degree to include both intentional and reckless killing. The current version of the statute, K.S.A. 1997 Supp. 21-3402, is the version in effect at the time of the crime and incorporates the 1993 amendment. It defines murder in the second degree as "the killing of a human being committed: (a) [i]ntentionally; or (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life."

Notably absent from the current definition of second-degree intentional murder is the term "malicious." In addressing the defendant's argument, we must answer the question whether the legislature intended to eliminate the element of malice from second-degree intentional murder when it deleted the term "malicious" from its definition. This is a question of law involving the interpretation of K.S.A. 1997 Supp. 21-3402(a). Our review is unlimited. See *State v. Robinson,* 261 Kan. 865, Syl. ¶ 1, 934 P.2d 38 (1997).

The legislature in its 1993 amendment specifically deleted the word "malicious" in defining the crime of second-degree intentional murder. The argument that malice remains an element of this crime is thus contrary to the 1993 statutory definition of second-degree intentional murder. K.S.A. 1993 Supp. 21-3402(a). While the language used in the 1993 amendment seems to resolve the question raised, the defendant makes several interesting arguments that must be addressed.

First, the defendant observes that malice under Kansas law is defined as the willful doing of a wrongful act without just cause or excuse and relates to a defendant's state of mind. He notes that in Kansas statutes, as well as at common law, second-degree murder

has been defined as a malicious killing. He argues that consistently over the years, "[t]he distinction between second degree murder and voluntary manslaughter is the presence or absence of malice." *State v. Wilson*, 215 Kan. 437, Syl. ¶ 2, 524 P.2d 224 (1974). See *State v. Jensen*, 197 Kan. 427, 417 P.2d 273 (1966), and cases cited therein for an extensive discussion of the element of malice in distinguishing murder and manslaughter. He argues that malice is so well defined in common law and in Kansas statutory interpretation that legislative silence as to this mental element of malice should not be construed as eliminating malice from the statutory definition of second-degree intentional murder.

In making the above argument, the defendant relies upon the case of *Morissette v. United States*, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952). Morissette was charged under 18 U.S.C. § 641 with theft from a government reservation. The statute involved was silent concerning the mental element required for a conviction of larceny. The court, in reversing Morissette's conviction, held that Congressional silence as to mental elements in a statute merely adopting into federal statutory law a concept of crime already well defined in common law will not be construed as eliminating that element from the crimes denounced. 342 U.S. at 262-63.

Unlike *Morissette*, the legislature in this state did not eliminate the mental element of second-degree intentional murder. Our statute is not silent. By expressed action, the legislature deleted the word malicious from the definition of second-degree intentional murder. We agree with the defendant's general observations concerning malice, but such observations do not support a conclusion that the legislature, by excluding the word malicious from the definition in second-degree murder, intended that malice nevertheless remain an element of that offense.

The defendant next points to the only significant legislative history involving the adoption of K.S.A. 1993 Supp. 21-3402, found in the comments of the Kansas Judicial Council on S.B. 358, which contained the amendment. The defendant's contention is best explained by setting forth in full what changes were proposed to the legislature, with comments by the Judicial Council in regard to both first-degree murder and second-degree intentional murder:

"Sec. 3. [On and after January 1, 1993,] K.S.A. 1991 Supp. 21-3401 is hereby amended to read as follows: 21-3401. (a) Murder in the first degree is ~~premeditated murder or~~ the killing of a human being committed:

~~(1) In the perpetration of or attempt to perpetrate any felony;~~

~~(2) in the perpetration of abuse of a child, as provided in K.S.A. 21-3600 and amendments thereto; or~~

~~(3) in the perpetration of, attempt to perpetrate, or as a result of the commission of any felony offense as provided in K.S.A. 65-4127a or 65-4127b, and amendments thereto.~~

~~(b) As used in this section, 'premeditated murder' means the killing of a human being committed maliciously, willfully, deliberately and with premeditation.~~

~~(c)~~ (a) Intentionally and with premeditation; or

(b) in the commission of, attempt to commit, or flight from an inherently dangerous felony.

Murder in the first degree is a class A felony.

*"Comment*

"The two types of first degree murder—premeditated and felony murder—are divided into subsections (a) and (b) respectively. For all practical purposes, the revisions merely clarify the statute.

"(a) Premeditated Murder

"The statutory language is simplified and generally patterned from the Model Penal Code. 'Willfully' is replaced with 'intentionally' because the latter term is better understood. 'Deliberately' is deleted because it is redundant. *'Maliciously' is deleted because it is unnecessary and confusing. The deletion of the term 'maliciously' is not a substantive revision* and is not intended to affect defenses. The definition of 'premeditation' is deleted because it is unnecessary."

. . . .

"Sec. ~~3~~ 4. [On and after January 1, 1993,] K.S.A. 21-3402 is hereby amended to read as follows: 21-3402. Murder in the second degree is the ~~malicious~~ killing of a human being~~,~~ committed without ~~deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony:~~

(a) Intentionally; or

(b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life.

32 Murder in the second degree is a class B felony.

"Comment

"Second degree murder is divided into two subsections. *Subsection (a) covers intentional murders and merely clarifies the statute.* Subsection (b) is new and covers 'depraved-heart' murders.
"(a) Intentional murder·
*"The statutory language is simplified and generally patterned from the Model Penal Code.* 'Intentionally' is added because it accurately reflects this type of murder and is easily understood. 'Without deliberation or premeditation,' 'not in perpetration or attempt to perpetrate a felony,' and 'maliciously' are deleted because they are unnecessary and confusing. *The deletion of the term 'maliciously' is not a substantive revision* and is not intended to affect defenses." (Emphasis added to Comment.)

The defendant argues that the comments of the Judicial Council clearly establish that there was no intent to substantively change the definition of first- or second-degree murder by the deletion of "malicious" from the statute. We disagree; the comments set forth above reveal no such intent. If we were to accept the above comments as the *expressed* intent of the legislature, we would have to conclude that no substantive change was intended and malice remains an element of second-degree intentional murder. However, this is not what the legislature *expressed* by its 1993 amendments to first- and second-degree murder. The plain and unambiguous language of the amendments deletes "maliciously" from first-degree murder and "malicious"·from second-degree intentional murder. "When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *State v. Lawson*, 261 Kan. 964, 966, 933 P.2d 684 (1997). Moreover, "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *State v. Clint L.*, 262 Kan. 174, Syl. ¶ 2, 936 P.2d 235 (1997). Finally, while the notes and comments of the Kansas Judicial Council may be helpful in determining legislative intent, they are advisory only and

do not have the force and effect of law. *State v. Schlein*, 253 Kan. 205, 217, 854 P.2d 296 (1993).

We conclude that under the plain and unambiguous language of K.S.A. 1997 Supp. 21-3402(a), second-degree intentional murder does not include the element of malice, and by reason of the 1993 amendment, malice is no longer an element of the crime in Kansas. The PIK committee, in commenting upon the 1993 amendments to first- and second-degree murder, noted that the elements of the crimes had been changed by the 1993 amendments. See PIK Crim. 3d 56.01; PIK Crim. 3d 56.03.

The defendant cites a line of Nebraska cases that he claims supports his contention that malice is an essential element of second-degree murder and failure to so instruct the jury is error. The defendant is correct that the Nebraska Supreme Court holds that malice remained an element of murder even after that term was deleted from the definition of the crime of murder. See *State v. Williams*, 247 Neb. 931, 938-39, 531 N.W.2d 222 (1995); *State v. Grimes*, 246 Neb. 473, 483-85, 519 N.W.2d 507 (1994); *State v. Myers*, 244 Neb. 905, 908-09, 510 N.W.2d 58 (1994). We are not bound by such decisions. We would, however, point to the dissenting opinion in *Grimes* by Justice Wright. See 246 Neb. at 486-94. We believe that his dissenting opinion is the better reasoned position. Finally, we are governed by the plain language of the legislature in its adoption of the amendment to second-degree murder in K.S.A. 1993 Supp. 21-3402(a).

The defendant advances several additional arguments in his attempt to convince us that even though malice has been deleted from the statute defining the crime of second-degree intentional murder, it nevertheless remains an element. He contends that without the element of malice, the statute is vague in that it does not clearly define the standards of guilt, thereby denying him due process of law. The defendant also argues that absent malice, the statute criminalizes homicide committed in self-defense and further results in a shifting of the State's burden of proving every element of the crime charged. He claims that under the statute, the defendant would have the obligation of proving that his act was either justified or excused under the law. The defendant argues

that this alleged shifting of the burden of proof is impermissible under the Due Process Clause of the United States Constitution citing *Mullaney v. Wilbur*, 421 U.S. 684, 703-04, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975).

The above claims by the defendant are without merit. In what was almost an identical claim, the defendant in *Patterson v. New York*, 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977), attacked the constitutionality of his second-degree murder conviction. Not unlike Kansas, the New York legislature had eliminated the element of malice from the definition of second-degree murder.

"In New York there are two elements of this crime [second-degree intentional murder]: (1) 'intent to cause the death of another person'; and (2) 'caus[ing] the death of such person or of a third person. [Citation omitted.] Malice aforethought is not an element of the crime. In addition, the State permits a person accused of murder to raise an affirmative defense that he 'acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse.' " 432 U.S. at 198.

Patterson, much like the defendant in this case, argued that the statute shifted the burden of persuasion from the prosecutor to the defendant, thus violating due process. The United States Supreme Court addressed Patterson's due process concerns as follows:

"We cannot conclude that Patterson's conviction under the New York law deprived him of due process of law. The crime of murder is defined by the statute, which represents a recent revision of the state criminal code, as causing the death of another person, with intent to do so. The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. No further facts are either presumed or inferred in order to constitute the crime. The statute does provide an affirmative defense—that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation—which, if proved by a preponderance of the evidence, would reduce the crime to manslaughter, an offense defined in a separate section of the statute. It is plain enough that if the intentional killing is shown, the State intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances.

"Here, the jury was instructed in accordance with the statute, and the guilty verdict confirms that the State successfully carried its burden of proving the facts of the crime beyond a reasonable doubt. Nothing in the evidence, including any evidence that might have been offered with respect to Patterson's mental state at

the time of the crime, raised a reasonable doubt about his guilt as a murderer; and clearly the evidence failed to convince the jury that Patterson's affirmative defense had been made out. It seems to us that the State satisfied the mandate of *Winship* that it prove beyond a reasonable doubt 'every fact necessary to constitute the crime with which [Patterson was] charged.' [*In re Winship,*] 397 U.S., at 364 [, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970)]." 432 U.S. at 206.

The Kansas Legislature has defined the crime of second-degree intentional murder as the "killing of a human being committed . . . [i]ntentionally." K.S.A. 1997 Supp. 21-3402(a). Death of a human being, intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of second-degree intentional murder. The definition of the crime is not vague. Moreover, the legislature left intact all defenses, including justification and excuse, to one charged with the crime of murder. See K.S.A. 21-3208 (intoxication); K.S.A. 21-3211 (use of force in defense of a person); K.S.A. 21-3212 (use of force in defense of dwelling); K.S.A. 21-3213 (use of force in defense of property other than a dwelling); K.S.A. 21-3214 (use of force by an aggressor); K.S.A. 21-3215 (law enforcement officer's use of force in making arrest); K.S.A. 21-3216 (private person's use of force in making arrest); and K.S.A. 21-3217 (use of force in resisting arrest).

In Kansas, we recognize affirmative defenses. However, unlike the New York statute at issue in *Patterson*, we do not require a defendant to establish his or her defense by a preponderance of evidence. Once evidence of self-defense or evidence that the defendant acted with lesser culpability has been raised, the trial court is bound to instruct the jury on self-defense and any lesser included offense raised by the evidence. It is then up to the jury to resolve the question of guilt upon the charged crime. See *State v. Ordway,* 261 Kan. 776, Syl. ¶ 1, 934 P.2d 94 (1997); *State v. Rutter,* 252 Kan. 739, 743, 850 P.2d 899 (1993). The trial court in this case instructed the jury on a whole range of offenses, including murder in the first degree, intentional murder in the second degree, reck-

less murder in the second degree, voluntary manslaughter, involuntary manslaughter, aggravated battery, and battery. Moreover, the court instructed the jury on self-defense. In addition, the trial court instructed on voluntary intoxication, burden of proof, and self-defense.

The instructions clearly demonstrate that every lesser included offense and all defenses raised by the evidence were presented to the jury and that the instructions did not shift the burden of proof to the defendant.

It should be noted that in its instructions regarding second-degree murder, the trial court relied upon PIK Crim. 3d 56.03, which set forth the elements as:

"1. That the defendant intentionally killed _____ ; and
"[2. That it was not done (upon a sudden quarrel) (in the heat of passion) (upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of [a person] [a dwelling] [property]); and]
2. or [3.] That this act occurred on or about the _____ day of _____, 19____, in _____ County, Kansas."

The Notes on Use to PIK Crim. 3d 56.03 discuss the use of bracketed element 2:

"Bracketed element 2 should be added where there is evidence which requires an instruction on voluntary manslaughter. But see *State v. Carpenter*, 228 Kan. 115, 126, 612 P. 2d 163 (1980) (Although premeditation is an element of first-degree murder but not second-degree murder, 'it is not incumbent upon the State to disprove premeditation when there is a malicious killing and defendant has only been charged with second-degree murder.') and *State v. Caldwell*, 21 Kan. App. 2d 466, 901 P. 2d 35 (1995) . . . ."

Given the language employed in the 1993 amendment defining second-degree intentional murder as the intentional killing of a human being, we do not believe that bracketed element 2 is required to be given even though there may be evidence which requires an instruction on voluntary manslaughter. Where such evidence is raised, and where there is evidence of the defenses raised, the trial court, as it did in this case, is duty bound to instruct the jury upon those defenses or lesser included offenses. Comments from *Patterson* support a conclusion that the State is not required to prove the negatives set forth in bracketed PIK Crim. 3d 56.03:

"It is said that the common-law rule permits a State to punish one as a murderer when it is as likely as not that he acted in the heat of passion or under severe emotional distress and when, if he did, he is guilty only of manslaughter. But this has always been the case in those jurisdictions adhering to the traditional rule. It is also very likely true that fewer convictions of murder would occur if New York were required to negative the affirmative defense at issue here. But in each instance of a murder conviction under the present law, New York will have proved beyond a reasonable doubt that the defendant has intentionally killed another person, an act which it is not disputed the State may constitutionally criminalize and punish. If the State nevertheless chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonable certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." 432 U.S. at 209.

Much like our state, the New York statute at issue in *Patterson* defined second-degree murder as intentionally killing another person. However, New York, unlike Kansas, required mitigation in the form of extreme emotional disturbance to be raised and established by the defendant by a preponderance of evidence. In Kansas, once evidence of self-defense or other defenses lessening culpability is admitted, the trial court is bound to instruct the jury on the defense or on lesser included offenses raised by such evidence. Failure to do so may result in reversible error and the granting of a new trial. The State, according to standard instructions, must nevertheless prove all elements of the crime by evidence beyond a reasonable doubt. This burden does not require the State to prove the nonexistence of mitigating circumstances set forth in bracketed element 2.

"Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interest against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here." *Patterson*, 432 U.S. at 210.

The giving of such an instruction in this case did not prejudice the defendant and, more than likely, was to his advantage.

· Affirmed.

McFARLAND, C.J., and ABBOTT, J., concurring in the result.