NOT DESIGNATED FOR PUBLICATION

No. 114,250

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CAMERON NELSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed January 27, 2017. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and POWELL, JJ.

*Per Curiam*:  After an evidentiary hearing, the Saline County District Court denied Defendant Cameron Nelson's motion for habeas corpus relief from his convictions for reckless second-degree murder and criminal possession of a firearm. Although the underlying criminal prosecution and conviction of Nelson proved especially contentious, the two issues he presents on appeal from the denial of his motion under K.S.A. 60-1507 are not. Nelson contends his trial lawyer should have objected to instructing the jury on the murder charge and the lawyer failed to preserve any issue related to an unavailable witness. But Nelson cannot show prejudice tainting his convictions. We, therefore, find no error in the district court's ruling and affirm.

1

FACTUAL AND PROCEDURAL HISTORY

The State's theory of the underlying homicide had Nelson, while riding with three other people in a car, reaching out the window and firing a handgun at the victim, a pedestrian standing a short distance behind the slowly moving vehicle. The shooting took place in April 2008 on a street in Salina. The evidence pointed to some bad blood between Nelson and the victim. The principal testimony against Nelson came from another passenger in the car, who had cut a deal in exchange for his cooperation with the prosecutors. No physical evidence tied Nelson to the shooting, and he never made any inculpatory statements to law enforcement officers. Some evidence suggested the victim was actually shot by another person on foot shortly before the car drove down the street. Nelson's defense essentially focused on that evidence and the shaky character of the State's case as fraught with reasonable doubt. Nelson did not testify in his own defense. We think it fair to say the evidence pointing to Nelson's guilt was less than overwhelming.

The procedural history, including three jury trials, reflects those evidentiary limitations. The State initially charged Nelson with intentional first-degree murder but amended the charge to intentional second-degree murder before the first trial in December 2008. The district court declared a mistrial after the jurors could not reach a verdict. The State added the firearms charge and in April 2009 tried Nelson a second time. Those jurors could not reach a verdict, so the district court declared another mistrial. At the third trial, in September 2009, the jurors convicted Nelson of reckless second-degree murder, as a lesser degree of homicide, and of unlawful possession of a firearm. The district court later sentenced Nelson to a controlling term of 300 months in prison, reflecting a downward durational departure.

On direct appeal, the sufficiency of the evidence supporting the guilty verdict for reckless second-degree murder proved challenging, as a panel of this court affirmed the convictions in a divided decision consisting of three opinions. *State v. Nelson*, No. 104,070, 2012 WL 1919859 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1253 (2013). In the lead opinion, Judge Pierron declined to reach the sufficiency question, reasoning that because Nelson's lawyer had not specifically objected to the instruction on reckless second-degree murder the invited error doctrine precluded review on appeal. 2012 WL 1919859, at *4-6. But see *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016) (failure to object to jury instruction does not in and of itself trigger invited error rule). Judge Buser bypassed invited error and found the evidence at the third trial required the district court to instruct on reckless second-degree murder, consistent with K.S.A. 22-3414(3). 2012 WL 1919859, at *16-17. Judge Buser, therefore, joined in the judgment affirming the conviction because the evidence taken in the best light for the State justified the guilty verdict. Judge Green dissented and would have reversed the reckless second-degree murder conviction, finding insufficient evidence to support it as a matter of law. 2012 WL 1919859, at *24.[*]

[*]The panel addressed other issues Nelson raised on direct appeal, but they do not factor in his 60-1507 motion. We need not extend this opinion by outlining them. The inquisitive reader may peruse those issues in Judge Pierron's lead opinion in the direct appeal. That same reader will find a wealth of detail about the underlying facts across those three opinions.

With the help of a new lawyer, Nelson pursued his 60-1507 motion. The district court held an evidentiary hearing in March 2015. The only witnesses to testify were Julie McKenna, who represented Nelson during all three trials, and Christina Trocheck of the Saline County Attorney's office, who represented the State in the third trial. The district court issued a lengthy written order denying the motion. Nelson has appealed, and that is what we have in front of us.

Nelson contends McKenna's representation of him leading up to and during the third trial fell below the standard of competence required to satisfy the right to counsel guaranteed criminal defendants in the Sixth Amendment to the United States Constitution. On appeal, he cites two purported deficiencies: (1) McKenna failed to object to the district court's decision to instruct the jurors on reckless second-degree murder; and (2) McKenna failed to preserve any issue arising from the unavailability of Kashif Wilson, one of the people riding in the car from which Nelson allegedly fired the handgun, to testify at the trial. After setting out some governing legal principles, we consider each claim in turn.

When reviewing the denial of a 60-1507 motion after a full evidentiary hearing, an appellate court accepts the district court's findings of fact to the extent they are supported with substantial competent evidence. The appellate court exercises unlimited review of the determinative legal issues in light of those factual findings. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

To demonstrate constitutionally ineffective assistance of the lawyer handling his criminal case in the district court, Nelson must show the representation fell below an objective standard of reasonableness resulting in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance); see also *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006) (stating *Strickland* test and *Chamberlain* standard of review). In short, Nelson must identify both substandard lawyering and resulting legal prejudice. As the United States Supreme Court and the Kansas Supreme Court have noted, review of the representation should be deferential and hindsight criticism tempered

lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should counsel's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options. *Strickland*, 466 U.S. at 690-91.

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 110-11, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller v. State*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014) (applying *Strickland* test to error by lawyer handling direct criminal appeal).

*Failure to Object to Jury Instruction*

For his first point, Nelson attempts to characterize as constitutional error McKenna's failure to object to the district court's decision to instruct on reckless second-degree murder as a lesser degree of intentional second-degree murder. At the outset, we mention that this case is governed by the criminal code as it was before the recodification that went into effect in 2011, since the shooting happened in 2008. Under the earlier code, reckless second-degree murder was a lesser degree of homicide measured against intentional second-degree murder, so a jury instruction on it would have been legally

appropriate. *State v. Jones*, 27 Kan. App. 2d 910, Syl. ¶ 4, 8 P.3d 1282 (2000) (recognizing reckless second-degree murder to be lesser degree of intentional second-degree murder); see *State v. Plummer*, 295 Kan. 156, 164, 283 P.3d 202 (2012) (legally appropriate to instruct on theft as lesser degree of robbery despite differing elements).

Even though an instruction on a lesser included offense may be legally appropriate, the facts of the particular case must support giving the instruction in that case. To warrant a jury instruction on a lesser offense, a party requesting the instruction must point to record evidence that, if believed, would permit the jury to return a guilty verdict on that offense. *State v. Hill*, 290 Kan. 339, 355-56, 228 P.3d 1027 (2010). The district court has a statutory duty to instruct jurors on any lesser included offense supported in the evidence. K.S.A. 22-3414(3). And the district court has to fulfill that obligation even if no request for an instruction on the lesser included offense has been made. Likewise, a defendant cannot release the district court from that duty through a request that the jurors not be instructed on otherwise legally and factually appropriate lesser included offenses. *State v. Cordray*, 277 Kan. 43, 53-54, 82 P.3d 503 (2004); *State v. Balbirnie*, No. 106,849, 2013 WL 3455772, at *3 (Kan. App. 2013) (unpublished opinion), *rev. denied* 298 Kan. 1204 (2014). Basically, K.S.A. 22-3414(3) precludes a defendant from pursuing an all-or-nothing strategy that would force a jury to choose between convicting him or her of the charged crime and finding him or her not guilty of anything, even though the evidence might well support some lesser offense. See *Cordray*, 277 Kan. at 53-54.

Given those principles, so long as some evidence supported a guilty verdict for reckless second-degree murder, the district court had to instruct the jury on that crime even if McKenna had objected. In other words, an objection from McKenna would have made no difference, and the failure would not have prejudiced Nelson. Accordingly, we have examined the trial record to determine if the evidence justified the district court's decision to give a reckless second-degree murder instruction.

We find there was adequate evidence for an instruction and, in turn, to uphold the jury's verdict. Our analysis essentially aligns with Judge Buser's concurring opinion in Nelson's direct appeal. The evidence showed the shooter reached back through the open window of the moving car and fired a handgun in the general direction of the victim. Based on the trial evidence, the shooter said nothing leading up to or during the incident to betray any particular criminal intent.

As codified in K.S.A. 21-3402(b), reckless second-degree murder required the State to prove Nelson killed "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." The criminal act itself—here, firing the handgun—may be intentional and deliberate. *State v. Deal*, 293 Kan. 872, 885, 269 P.3d 1282 (2012). But the criminal actor—here, Nelson—must have undertaken the act *without* an intent to kill. 293 Kan. at 885. The circumstances, nonetheless, have to evince "extreme indifference" to the imminent danger the act poses to human life. 293 Kan. at 884. By contrast, a defendant acting with an intent to kill would be guilty of intentional second-degree murder, as defined in K.S.A. 21-3402(a), if the act resulted in the death of another person.

In this case, the evidence was consistent with the shooter firing the handgun in the vicinity of the victim without necessarily intending to kill or even hit the victim—prompted, perhaps, by a desire to scare or intimidate the victim. The trial evidence did not show the shooter carefully aimed the gun. Nor did the shooter say something manifesting a desire to kill the victim. That evidence conforms to an unintentional killing. At the same time, firing a handgun from a moving car even in the general vicinity of another person indicates a marked indifference to potentially fatal consequences. A handgun, after all, is a deadly weapon. And in firing more or less indiscriminately toward someone, the shooter disregards the real and imminent danger a bullet may strike that person inflicting a life-threatening injury. The circumstances bear a close resemblance to

the classic example of a depraved-heart murder, the common-law antecedent to reckless second-degree murder: firing a rifle at a moving passenger train, resulting in the death of one of the occupants. See *Wilkerson v. State*, 336 P.3d 1188, 1195-96 (Wyo. 2014) (citing that example and also intending to fire a shot near someone to scare him or her but aiming poorly and instead striking the individual, inflicting a fatal injury).

Given the trial evidence, the district court had a duty under K.S.A. 22-3414(3) to instruct the jurors on reckless second-degree murder whether or not McKenna objected. As we have indicated, McKenna's failure to object—whatever the reason—made no difference in how the trial unfolded or in how the jurors properly should have been instructed. Nelson has no constitutional complaint as to his legal representation on that score, since he suffered no prejudice. His 60-1507 motion presented no grounds for relief in that respect.

*Failure to Preserve Issue of Unavailable Witness*

As part of a motion for a new trial following Nelson's convictions, McKenna submitted an affidavit from Wilson stating that Nelson was not in the car at the time of the shooting. Wilson had been charged as coconspirator in the shooting, since he had been in the car. Because his own case remained unresolved, Wilson did not testify at any of Nelson's trials. Sometime after Nelson's third trial and before the hearing on Nelson's new trial motion, Wilson entered a plea to a reduced charge. At the motion hearing, McKenna argued Wilson had been unavailable as a witness at Nelson's third trial and his testimony would have materially affected the outcome to Nelson's benefit. Accordingly, McKenna contended that Wilson's testimony should be considered newly discovered evidence.

The district court denied that aspect of the new trial motion because McKenna had failed to comply with the procedure outlined in *State v. Littlejohn*, 236 Kan. 497, 502-03,

8

694 P.2d 403 (1984), for dealing with potential witnesses who likely would invoke their privilege against self-incrimination if called to testify—making them unavailable. With a brief discussion that cites no authority or any detailed rationale, the *Littlejohn* court accepted the State's argument that an affidavit from a witness such as Wilson could not be considered newly discovered evidence. The court held that to preserve the "new evidence" issue, a defendant either had to subpoena the potential witness for trial and have that person invoke his or her privilege against self-incrimination in a hearing outside the jury's presence or had to request a continuance of the trial until the witness had been adjudicated on his or her own pending charges, thereby eliminating the legal basis for asserting the privilege. 236 Kan. at 502-03. McKenna had done neither in addressing Wilson's unavailability as a witness in the third trial.

In his 60-1507 motion, Nelson argued that McKenna's failure to follow the directive in *Littlejohn* amounted to a deprivation of constitutionally adequate representation, since Wilson's affidavit could not be considered in securing a new trial or raised as a reason for reversing his convictions on direct appeal. Nelson also suggested that had McKenna requested a continuance of his third trial for the purpose of securing Wilson's testimony, the district court might have granted the request. In considering Nelson's 60-1507 motion, the district court rejected that argument on the grounds that the factual assertions in Wilson's affidavit were of "suspect" credibility.

The hearing transcript on the 60-1507 motion, however, demonstrates another more basic problem that undermines Nelson's position. Nelson produced no admissible evidence at the hearing to establish prejudice as required under the second step in the *Strickland* analysis. Wilson's affidavit was inadmissible for that purpose.

At the hearing, Wilson, on the advice of his own lawyer, refused to testify about the affidavit or to repeat its substantive content. He effectively invoked his right against self-incrimination as to those topics. That left Nelson without any admissible evidence at

9

the hearing to show that he had not been in the car at the time of the shooting. When Wilson refused to testify, he became unavailable as a witness. See K.S.A. 60-459(g)(1). Wilson's affidavit constituted hearsay under K.S.A. 60-460, and it did not fit within any exception, so the district court properly declined to consider it. Had Wilson testified at a deposition or an earlier hearing, that testimony would have been admissible. K.S.A. 60-460(c). But the hearsay exceptions do not permit the use of an affidavit from a person who is unavailable to testify at an evidentiary hearing—admitting the affidavit would deprive the opposing party of any opportunity to cross-examine the affiant. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) (appearance on witness stand with attendant cross-examination creates powerful mechanism for unveiling inaccuracies and fabrications); *In re Guardianship and Conservatorship of L.M.H.*, No. 108,297, 2013 WL 2395900, at *13 (Kan. App. 2013) (unpublished opinion) (Hearsay is generally considered unreliable because, in part, the declarant does not appear in court and, therefore, avoids the rigor of cross-examination to test the reliability of his or her statements.).

Accordingly, Nelson failed to offer admissible evidence at the hearing on his 60-1507 motion to suggest he had not been in the car at the time of the shooting. Without that evidence from Wilson, he could not establish any demonstrable prejudice in how McKenna dealt with Wilson—that is, a reasonable possibility that the result of his third trial somehow would have been different. For that reason, Nelson's point warrants no relief, and the district court properly rejected it.

An affidavit, like the one from Wilson, may be used to support a *request for an evidentiary hearing* on a 60-1507 motion assuming it contains relevant information to which the affiant could testify at the hearing. A district court reviews the motion and the supporting materials to determine if they present a colorable basis for relief. If so, the district court is to schedule a hearing to "determine the issues and make findings of fact and conclusions of law." K.S.A. 60-1507(b). At the hearing, the movant must prove his

claims with testimony, documents, and other materials admissible under the rules of evidence. At that stage, an affidavit, standing alone, does not present or constitute admissible evidence supporting substantive relief. The same evidentiary constraints would be true for a motion for a new trial. That is, an affidavit could warrant an evidentiary hearing, but the affiant would then have to testify at the hearing. So at any evidentiary hearing on Nelson's new trial motion, the district court could not have considered Wilson's affidavit in determining whether to order a new trial. Nothing in the record suggests Wilson was prepared to testify at the new trial hearing. We may reasonably assume he would have declined to do so, as he did at the 60-1507 hearing.

Having worked through the issues Nelson has raised on appeal, we conclude that the district court reached the proper result in denying the 60-1507 motion.

Affirmed.